IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

RANDY KEITH SCOTT,

                    Plaintiff,

   v.

NICOLE BROWN and DR. LAURA C. SUKOWATY,

                    Defendants.

OPINION and ORDER

24-cv-103-jdp

---

Plaintiff Randy Keith Scott, proceeding without counsel, alleges that defendants Dr. Laura C. Sukowaty and Nicole Brown ignored his complaints about nerve pain and refused to give him medication for that condition. In particular, Scott faults Sukowaty for denying a nonformulary request for gabapentin and failing to prescribe alternative pain medication, and he faults Brown for failing to intervene in Sukowaty's denial of pain medication.

Defendants move for summary judgment. Dkt. 55. The evidence conclusively shows that: (1) Sukowaty based her decision to deny gabapentin on her medical judgment that gabapentin would be ineffective for Scott's nerve pain and that Scott might abuse it; and (2) Brown lacked the authority to override Sukowaty's treatment decision or expedite an appointment with a provider or offsite specialist. I will grant defendants' motion and close the case.

## UNDISPUTED FACTS

I begin with a preliminary matter. Defendants ask me to adopt their proposed facts in their entirety. Dkt. 66 at 2–5. Scott's response includes a brief in opposition and declaration. Dkt. 61 and Dkt. 62. Defendants contend that Scott's factual statements are inadmissible

because he did not sign either submission "under penalty of perjury" pursuant to 28 U.S.C. § 1746. *See* Dkt. 66 at 2–5. In response, Scott moves to amend the first pages of both submissions to correct this deficiency. Dkt. 68. I will grant Scott's request. Scott made a technical error; he's now corrected it.

Defendants contend that Scott's proposed facts fail to comply with the court's summary procedures for other reasons. Dkt. 66 at 5. I agree that Scott's disputes of defendants' proposed facts have problems. For instance, some of Scott's responses lack citations to admissible evidence, and some of Scott's evidentiary citations don't support his responses. But, given Scott's status as a pro se litigant, I will not deem all defendants' proposed facts to be undisputed. I will evaluate each proposed fact to determine if any purported dispute is supported by evidence. I will consider statements in Scott's declaration and brief and opposition if they are based on his personal knowledge. I will also consider the medical records and other documents that Scott cites as evidence despite potential authentication issues.

With that background, the following facts are undisputed except where noted.

Scott is incarcerated at New Lisbon Correctional Institution (NLCI) and the events underlying his medical care claim mostly occurred there. Dr. Sukowaty is the associate medical director for the Department of Corrections, and she also works as a physician at several DOC institutions. Brown is a registered nurse and the health services manager at NLCI.

Scott has been diagnosed with right L2 and L3 radiculopathy, osteoarthritis, and post-traumatic facial trigeminal neuralgia. Trigeminal neuralgia is a condition that affects the trigeminal nerves in the face, causing intense pain similar to an electric shock on one side of the face. *See* https://www.mayoclinic.org/diseases-conditions/trigeminal-neuralgia/symptoms-causes/syc-20353344l; *Talamantes v. Metro. Life Ins. Co.*, 3 F.4th 166, 168 n.1 (5th Cir. 2021);

*Davis v. Callahan*, 125 F.3d 670, 674 n.11 (8th Cir. 1997). The trigeminal neuralgia resulted from a gunshot wound to Scott's face in 2020, and Scott also experiences head pain caused by an earlier gunshot wound to the right side of his head. *See* Dkt. 62 ¶ 36; Dkt. 67 ¶ 71. It's unclear whether Scott received the earlier gunshot wound in 2014 or 2004, but the exact year is immaterial.

In July 2023, Scott received a major conduct report for using intoxicants. Dkt. 27-8 at 1–2. Scott accepted an uncontested major disposition of 30 days' disciplinary segregation but he did not admit guilt. *Id.* at 1, 3.

On October 24, 2023, an offsite neurologist, Dr. Susanne K. Seeger, saw Scott for complaints of head and face pain. Seeger recommended discontinuing oxcarbazepine because it was ineffective. Dkt. 39-1 at 58, 60. Seeger recommended gabapentin for both "neuralgic pain" associated with one of his gunshot wounds and "posterior head pain" associated with the other gunshot wound. *See id.* at 59–60. Seeger also documented that Celebrex had been effective for Scott's posterior head pain. *See id.* at 58–60.

A week later, based on Seeger's recommendation, Advanced Practice Nurse Prescriber (APNP) Sarah Staff entered a nonformulary drug request for gabapentin. *Id.* at 65–66. Advanced care providers, including both physicians and APNPs, may prescribe formulary medications without prior approval, but nonformulary medications require approval.

In response to Staff's request, Sukowaty reviewed Scott's medical record from January 2023. Dkt. 39 ¶ 39; Dkt. 39-1 at 8. The record said that Scott reported that he had tried gabapentin from January 19 to February 18, 2022, but that it was ineffective for his pain and was discontinued. Scott says that he reported at that time that gabapentin was partially effective. Dkt. 67 ¶ 79.

Sukowaty says that she denied the request for gabapentin because: (1) Scott had previously tried gabapentin and pregabalin without much success; (2) Scott had received a conduct report for using intoxicants; and (3) prescribing gabapentin could harm Scott's health, the health of other prisoners, and institutional security. Dkt. 57 ¶¶ 41–42.

Advanced care providers are primarily responsible for prisoners' care. *See* Dkt. 67 ¶ 44; Dkt. 61-6 at 19. Sukowaty was not Scott's advanced care provider. *See* Dkt. 67 ¶ 45. Sukowaty's involvement in Scott's care was limited to reviewing and denying the nonformulary request for gabapentin for Scott in October 2023. *See id.* Scott needed to see an advanced care provider if he was seeking an alternative pain medication. *See id.* ¶ 46.

Between November 2023 and August 2024, Scott wrote to HSU staff several times to complain about inadequate treatment for his nerve pain. *See generally* Dkt. 58-1. Brown answered many of these requests. *Id.* at 2–3, 14, 16–17, 19, 21, 25, 27. In response, Brown: (1) responded that Sukowaty denied gabapentin based on DOC policy; (2) noted that Scott had upcoming appointments with providers and specialists; or (3) advised Brown to follow his care plan. *See id.* In May 2024, Brown wrote that she made a referral to a provider to discuss some of Scott's pain issues. *Id.* at 2.

I will discuss other facts as they become relevant to the analysis.

ANALYSIS

Scott generally alleges that Sukowaty and Brown ignored his complaints about nerve pain and refused to give him medication for that condition. The Eighth Amendment prohibits prison officials from consciously disregarding the serious medical needs of prisoners. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To prove a medical care claim, Scott must show that he had

an objectively serious medical condition that defendants consciously disregarded. *See Cesal v. Moats*, 851 F.3d 714, 721 (7th Cir. 2017). Defendants don't dispute that chronic nerve pain associated with Scott's post-traumatic facial trigeminal neuralgia, radiculopathy, or osteoarthritis is a serious medical need. The primary issue is whether defendants consciously disregarded Scott's need for medication for his chronic nerve pain.

Conscious disregard requires that defendants are subjectively aware of that need. *See id.* That means that defendants knew of facts from which the inference could be drawn that a substantial risk of serious harm existed, and they actually drew that inference. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Conscious disregard involves intentional or reckless conduct, not mere negligence. *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010).

The Eighth Amendment entitles prisoners to "adequate medical care," that is, "reasonable measures to meet a substantial risk of serious harm." *See Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006). The Eighth Amendment doesn't require "specific care" or "the best care possible." *Id.*; *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Disagreement between Scott and defendants, or among medical professionals, about the proper course of treatment isn't enough to show conscious disregard. *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014); *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996).

Ignoring a prisoner's request for medical assistance outright can be enough to show conscious disregard of medical needs. *Petties v. Carter*, 836 F.3d 722, 729 (7th Cir. 2016) (en banc). If a medical professional has provided some care for a prisoner's condition, she consciously disregards the serious medical need only if her care is so inadequate that it demonstrates an absence of professional judgment, that is, that no minimally competent professional would have responded in that way in the circumstances. *See Stewart v. Wexford*

*Health Sources, Inc.*, 14 F.4th 757, 763 (7th Cir. 2021); *Collignon v. Milwaukee Cnty.*, 163 F.3d 982, 989 (7th Cir. 1998). The key question is whether the medical professional based her treatment decision on her medical judgment. *See Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 241 (7th Cir. 2021).

## A. Medical care claim against Sukowaty

I take a moment to clarify the scope of Scott's medical care claim against Sukowaty. Scott proceeds against Sukowaty based on allegations that Sukowaty discontinued his oxcarbazepine and refused to provide alternative pain medication for nerve pain to punish him for a nonmedical reason, i.e., for receiving a conduct report. *See* Dkt. 6 at 3; Dkt. 31 at 1. Seeger, the offsite neurologist, recommended discontinuing oxcarbazepine in October 2023 because it was ineffective. At the summary judgment stage, Scott does not seek relief from Sukowaty based on her decision to discontinue oxcarbazepine. Rather, Scott faults Sukowaty for denying APNP Staff's nonformulary request for gabapentin, which was based on Seeger's recommendation. More generally, Scott faults Sukowaty for not prescribing alternative medication for nerve pain.

The evidence shows that Sukowaty denied the request for gabapentin based on her medical judgment. Sukowaty says that she denied that request because: (1) Scott had previously tried gabapentin and pregabalin without much success; (2) Scott had received a conduct report for using intoxicants; and (3) prescribing gabapentin could harm Scott's health, the health of other prisoners, and institutional security. Dkt. 57 ¶¶ 41–42.

Scott disagrees that Sukowaty based that decision on her medical judgment, but he hasn't genuinely disputed that issue. Scott says that he had previously used gabapentin with some success. But Scott's medical record from January 2023 said that Scott had tried

gabapentin but that it was discontinued because it was ineffective. Even if Sukowaty misinterpreted that record, there's no evidence that Sukowaty thought that gabapentin had previously proved effective for Scott's nerve pain. The evidence Scott cites, including Sukowaty's declaration, is immaterial and doesn't show otherwise. *See* Dkt. 57 ¶ 79; Dkt. 61-5 at 5. Scott suggests that Sukowaty should have realized that gabapentin would be effective because Seeger recommended it. But Sukowaty's disagreement with Seeger's recommendation does not show conscious disregard. Also, Scott hasn't disputed that he had previously tried pregabalin without much success, and pregabalin and gabapentin are in the same class of medications (gabapentinoids). *O'Brien v. Saha*, No. 19-cv-1957, 2021 WL 321971, at *7 n.7 (S.D. Cal. Jan. 30, 2021), *report and recommendation adopted*, 2021 WL 960693 (S.D. Cal. Mar. 15, 2021), *aff'd*, No. 21-55326, 2022 WL 16945892 (9th Cir. Nov. 15, 2022). Sukowaty had a basis to doubt the effectiveness of gabapentin, despite Seeger's recommendation. *See Wilson v. Adams*, 901 F.3d 816, 822 (7th Cir. 2018) (stating that a prison doctor doesn't always have to follow the recommendation of a specialist); *Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018) ("Failing to provide care for a *non-medical reason*, when that care was recommended by a medical specialist, can constitute [conscious disregard of medical needs]." (emphasis added)).

Scott disputes that he had used intoxicants or abused pain medication. Scott notes that his major conduct report for using intoxicants was based on his failure to provide adequate urine samples. Scott explains that he couldn't provide adequate urine samples because a staff member was watching him, which affected him psychologically. Dkt. 61 ¶ 35. But it's undisputed that Scott accepted an uncontested major disposition of 30 days' disciplinary segregation for using intoxicants, and there's no evidence that Sukowaty was aware of Scott's

stated psychological difficulties with providing urine samples. Sukowaty had a reason to think that Scott had abused medication.

Along those lines, Sukowaty had a reason to think that prescribing gabapentin could harm Scott's health, the health of other prisoners, and institutional security. It's undisputed that: (1) gabapentin is a nonformulary medication with a very high rate for potential misuse and diversion; (2) prisoners often divert gabapentin to other prisoners for secondary gain; (3) prisoners have hoarded gabapentin so that they can take multiple doses at once to get high; and (4) there's some medical evidence that gabapentin is addictive. These facts show that Sukowaty relied on her medical judgment in concluding that prescribing Scott gabapentin could prove harmful. *See Machicote v. Roethlisberger*, 969 F.3d 822, 827–28 (7th Cir. 2020) (administrative considerations can be permissible factors in a provider's treatment decision).

Scott says that defendants admitted in discovery responses that the conduct report was a "non-medical issue." Dkt. 61-6 at 13–14. These admissions are immaterial. The conduct report for using intoxicants, standing alone, was a nonmedical issue. The conduct report became a factor that informed Sukowaty's medical judgment when APNP Staff made a nonformulary request for gabapentin. A prison doctor may consider relevant reports from correctional staff in making treatment decisions. *See Jordan v. Gunderson*, 22-cv-962-jdp, Dkt. 155 at 7–8.

Scott also contends that Sukowaty denied him alternative pain medication entirely. But it's not genuinely disputed that: (1) advanced care providers are primarily responsible for prisoners' care; (2) Scott needed to see an advanced care provider if he was seeking an alternative pain medication; (3) Sukowaty was not Scott's advanced care provider; and (4) Sukowaty's involvement in Scott's care was limited to reviewing and denying the

nonformulary request for gabapentin for Scott. Scott hasn't shown that Sukowaty "caused the deprivation of [alternative pain medication]," which he must do to prevail on his medical care claim. *See Ortiz v. City of Chicago*, 656 F.3d 523, 539 (7th Cir. 2011); *see also Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017) ("Individual liability under [42 U.S.C.] § 1983 . . . requires personal involvement in the alleged constitutional deprivation." (alteration adopted)).

Scott says that the DOC's medical director, Dr. Daniel Lavoie, prescribed him Celebrex in February 2023, which Scott contends shows that Sukowaty could have prescribed him alternative pain medication when she denied gabapentin. Dkt. 61 ¶ 24; Dkt. 61-5 at 11. But there's no evidence that Lavoie prescribed Celebrex while reviewing a nonformulary request for another pain medication; it's unclear in what capacity Lavoie was acting when he prescribed Celebrex. In addition to serving as associate medical director, Sukowaty works as a physician at several DOC institutions. Scott hasn't shown that Sukowaty was acting as his provider when she reviewed Staff's request for gabapentin, or that Sukowaty was responsible for exploring other options to treat Scott's nerve pain at that time.

Even if Sukowaty had that responsibility, there's no evidence that she thought that Scott required alternative pain medication when she denied gabapentin. Scott was taking Celebrex when Seeger recommended gabapentin in October 2023. Sukowaty says that Celebrex is a prescription medication that is "quite effective" in reducing pain and inflammation, and that is used to treat neuralgia. Dkt. 39 ¶ 59; Dkt. 59 ¶ 13. Scott disagrees that Celebrex is prescribed for nerve pain, but he is a layperson and is not competent to testify about this matter. The medical literature that Scott cites is hearsay and, in any case, doesn't refute Sukowaty's statement that Celebrex is used to treat neuralgia. *See* Dkt. 61-5 at 3; *Carlisle v.*

*Deere & Co.*, 576 F.3d 649, 655 (7th Cir. 2009) (courts may not rely on inadmissible hearsay on summary judgment).

I take Scott to contend that Sukowaty should have realized that Celebrex was ineffective for his facial nerve pain and radicular pain. Scott says that Seeger reported that Celebrex helped headache pain in Scott's upper cervical area and "the back of the head at the base of the skull," not his neuralgic face pain. *See* Dkt. 39-1 at 59. Similarly, Scott notes that Lavoie's February 2023 prescription for Celebrex says that it was for "neck pain." 61-5 at 11. Scott adds that the headache pain was caused by his osteoarthritis. Dkt. 61 ¶ 35.

Scott's effort to distinguish his nerve pain from other pain that he experienced is not fully clear. In the amended complaint, Scott alleged that he had neuralgic pain resulting from both gunshot wounds, and Seeger documented that one of the gunshot wounds caused the pain in the back of his head at the base of his skull. Dkt. 32 at 1; Dkt. 39-1 at 57. Those facts suggest that Scott feels nerve pain at the base of his skull. Scott explains that he had "neuralgia pain" in his face, groin, and "the back of [his] head." Dkt. 61 ¶ 35. The distinction that Scott seems to draw between nerve pain in his face and the back of his head and headache pain in the base of his skull is poorly supported. *See id.*

I need not resolve this lack of clarity to decide Scott's claim against Sukowaty. Even if Seeger, Lavoie, and other doctors reported that Celebrex didn't help the nerve pain Scott felt in his face and lower back (in contrast to headache pain at the base of his skull), Sukowaty's disagreement with their treatment decisions does not show conscious disregard. Scott says that defendants admitted that Celebrex isn't for nerve pain in a discovery response. But defendants admitted only that gabapentin, duloxetine, and oxcarbazepine, and nortriptyline are nerve pain medications; they didn't admit that Celebrex doesn't treat nerve pain. Dkt. 61-6 at 9.

Additionally, Scott had lidocaine cream when Sukowaty denied gabapentin, so he had another option for pain relief. *See* Dkt. 61 ¶ 20; Dkt. 67 ¶ 96. Scott says that the lidocaine didn't help his nerve pain, but there's no evidence that Sukowaty thought that to be the case. *See* Dkt. 61 ¶ 20; Dkt. 67 ¶ 107.

Scott contends that Sukowaty stopped him from receiving alternative medication for his nerve pain by denying the request for gabapentin. Scott says that a DOC provider named "Legrand" told Scott in January 2024 that Sukowaty had denied gabapentin. Dkt. 61 ¶ 29. Scott also says that he asked Legrand for alternative pain medication but that Legrand denied this request, telling Scott that Legrand could not "go over" Sukowaty because she was the associate medical director. *Id.* This contention doesn't create a genuine dispute about whether Sukowaty stopped Legrand from prescribing alternative pain medication because Legrand's statements are inadmissible hearsay. *See Carlisle*, 576 F.3d at 655.

Based on the evidence as a whole, no reasonable juror could conclude that Sukowaty consciously disregarded Scott's need for medication to treat his chronic nerve pain. I will grant summary judgment to Sukowaty on Scott's medical care claim against her.

## B. Medical care claim against Brown

Scott proceeds against Brown based on the allegation that Brown refused to intervene in Sukowaty's refusal to provide pain medication. Dkt. 6 at 4; Dkt. 31 at 1. A defendant cannot be liable under § 1983 "if the remedial step was not within [her] power." *See Miller v. Harbaugh*, 698 F.3d 956, 962 (7th Cir. 2012). The basic rule is that a nurse is entitled to defer to a doctor's medical judgment. *See Pulera v. Sarzant*, 966 F.3d 540, 553 (7th Cir. 2020).

If Scott faults Brown for not providing alternative pain medication, the evidence conclusively shows that Brown lacked this authority. It's undisputed that because Brown's

11

position is mainly administrative, she generally does not evaluate, diagnose, or determine a course of treatment for prisoners. Dkt. 67 ¶ 11. Specifically, it's undisputed that Brown has no authority to prescribe medication for prisoners.

I take Scott to contend that Brown should have tried to expedite an appointment with a provider or offsite specialist because of his frequent complaints about nerve pain. Brown says that she lacked the authority to schedule appointments with offsite providers, and that she had no control over the schedules of DOC providers. Dkt. 58 ¶¶ 10–11. Scott does not cite any admissible evidence to dispute Brown's statement. Dkt. 67 ¶¶ 13–14. Scott says that Brown had "administrative power" to intervene in the denial of medical care. *See* Dkt. 62 ¶ 22. But Dr. Lavoie's general statement that HSU staff play a role in prisoners' medical care doesn't reasonably support that inference. Nor does the fact that Brown was the health services manager and a contact person for institution complaint examiners support a reasonable inference that Brown could have expedited an appointment with a provider or specialist. *See* Dkt. 61 ¶ 35.

Brown referred Scott to a provider for his complaints about nerve pain in May 2024. Dkt. 58-1 at 2. But there's no evidence that Brown controlled how fast a provider would see a prisoner once a referral was made. Nor is there any admissible evidence that Brown could have convinced a provider to give Scott alternative pain medication. Brown says that she: (1) she generally relied on the expertise and professional judgment of the treating physician and deferred to that individual's decisions; (2) could not change the treatment prisoners received from providers; and (3) had no authority to override the treatment decisions made by providers and offsite specialists. Dkt. 58 ¶¶ 12–13, 44. Scott disagrees with Brown's statements, but he doesn't support his disputes with admissible evidence. *See* Dkt. 67 ¶¶ 13–16, 50. Scott's general

12

statement that Brown had administrative power doesn't create a genuine dispute about whether she could obtain a faster appointment or different treatment.

Even if Brown had the power to expedite an appointment with a provider, Scott must show that her failure to act caused him prolonged and unnecessary pain to prevail. *See Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010). Scott must also show that Brown's failure to act harmed him. *See Lord v. Beahm*, 952 F.3d 902, 905 (7th Cir. 2020).

Scott hasn't shown that Brown's failure to expedite an appointment with a provider caused him unnecessary pain or otherwise harmed him. I take Scott to contend that Dr. Justin Ribault prescribed amitriptyline in late October 2024, and that this medication provided him some relief from his nerve pain. *See* Dkt. 61 ¶ 13. But there's no evidence that, if Brown had made greater efforts to expedite an appointment, Scott would have received amitriptyline sooner.

No reasonable juror could conclude that Brown consciously disregarded Scott's serious medical need or harmed him. I will grant summary judgment to Brown on Scott's medical care claim.

ORDER

IT IS ORDERED that:

1.  Defendants' motion for summary judgment, Dkt. 55, is GRANTED.

2.  Plaintiff's motion to amend declaration and brief in opposition, Dkt. 68, is GRANTED.

3.  The clerk of court is directed to enter judgment and close the case.

Entered August 12, 2025.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge